IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | CRIM. NO.: 10-cr-37 |
| v. ) | |
| ) | |
| JAMASON D. CHARLES ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Finch, Senior Judge

THIS MATTER is before the Court on the motion of defendant Jamason Charles ("Charles") for a Franks Hearing. Charles is presently detained prior to trial on a first degree murder charge for the shooting death of Dupert "Apache" Knowles III and related firearms charges.

Charles asserts that statements included in the affidavit submitted in support of the arrest warrant executed against him contained "deliberately falsified allegations and material omissions in reckless disregard for the accuracy of the affidavit." In particular, Charles alleges that the statement that a witness identified him in a photo array as the person the witness saw shoot the victim was false. The government opposes the motion on the grounds that (1) Charles has failed to make a substantial preliminary showing that a false statement was included in the warrant affidavit; and (2) that Charles' motion is made for the improper purpose of dismissing the indictment for lack of evidence.

I.

First, the Court addresses the issue of whether a motion for a *Franks* hearing is proper in this case. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court set forth the standard for invoking the exclusionary rule based on an invalid search warrant. Under the *Franks* standard, where a defendant establishes by a preponderance of the evidence that the warrant contains a false statement that was made knowingly and intentionally, or with reckless disregard for the truth and that the allegedly false statement is necessary to the finding of probable cause, the fruits of the search must be excluded. *United States v. Frost*, 999 F.2d 737, 742-43 (3d Cir. 1993) (citing *Franks*, 438 U.S. at 155-56).

Here, Charles does not seek to suppress any evidence recovered pursuant to the challenged warrant. Instead, he argues that his arrest was illegal because it was not supported by probable cause and seeks to have the indictment dismissed on that basis. However, even assuming arguendo that Charles' detention was illegal, "(a)n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution." *Government of Virgin Islands v. Josiah*, 641 F.2d 1103, 1105 (3d Cir. 1981) (quoting *United States v. Crews*, 445 U.S. 463, 474 (1980)). While the "exclusionary principle . . . delimits what proof the Government may offer against the accused at trial . . . [the defendant] is not himself a suppressible "fruit," and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *United States v. Riggins*, 2009 WL 840590, at *1 (3d Cir. 2009) (quoting *Crews*, 445 U.S. at 474).[1] Thus, as a threshold matter, the Court finds that Charles does not have a proper basis for asserting a Franks hearing.

---

[1] Charles does not title his motion one to dismiss the indictment, but that is essentially what he is seeking, albeit through a *Franks* hearing. However, "a pretrial motion to dismiss an indictment is not a permissible vehicle for

II.

Even if the Court considered a Franks hearing to be the proper method for challenging Charles' arrest, the Court finds that Charles had not alleged facts adequate to merit such a hearing.

"To mandate an evidentiary hearing," regarding the validity of a search warrant, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171.  A defendant is only entitled to a Franks hearing, where he or she has made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *United States v. Brown*, 3 F.3d 673, 676 (3d Cir. 1993) (quoting *Franks*, 438 U.S. at 155-56)).[2]  Such a showing requires that the defendant identify "the portion of the warrant affidavit that is claimed to be false." *Franks*, 438 at 171.  Moreover,"[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."   Furthermore, "the allegedly false statement [must be] necessary to the finding of probable cause.  *Brown*, 3 F.3d at 676 (quoting *Franks*, 438 U.S. at 155-56).

---

addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000).  Nor has Charles adequately asserted facts sufficient for dismissal under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, which permits a defendant to challenge the indictment on the basis that there was a "defect in instituting the prosecution" or that there is a defect in the indictment. Fed. R. Crim. P. 12(b)(3)(A)-(B).  As the Third Circuit has held, an indictment is deemed sufficient when the indictment:

> (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007).  In this case, Charles does not attack the indictment, but only his arrest, or the facts underlying his arrest.  Such an attack is not sufficient for dismissal of an indictment.
[2] As the Third Circuit has held, a material omission can also establish reckless disregard for the truth for purposes of a Franks hearing.  "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation and citation omitted).

III.

The Court first briefly recites the facts surrounding Charles' arrest and the filing of this motion.  Dupert "Apache" Knowles III was shot and killed on March 16, 2010.  On May 5, 2010, Sgt. Dino Herbert ("Herbert") of the Virgin Islands Police Department ("VIPD") executed an affidavit in support of an arrest warrant for Charles and a search warrant for a location in Frederiksted associated with the defendant.  Subsequently, Charles was arrested and charged with first degree murder for the killing of Knowles.[3]  On August, 17, 2010, Charles was indicted for that murder along with several firearms charges including felon in possession of a firearm, unauthorized possession of a firearm and using and carrying a firearm during and in relation to a crime of violence.  The government thereafter produced discovery that included two photo arrays, one dated __/1/10 and the other dated __/26/10, the first of which was referenced in the affidavit.  After receiving these photo arrays, Charles concluded that the portion of the affidavit referencing the photo array dated __/1/10 was false and that the falsity of that statement deprived the affidavit of the requisite probable cause to seize him.

In his affidavit, Herbert set forth several facts in support of the search and arrest warrant.  A substantial portion of the affidavit relied on the testimony of a witness only identified as "W."  W told police that on March 16, 2010 in the vicinity of the Marley Project he/she saw "a short brown skin male individual" named Jama standing behind Knowles. (Aff. ¶ p).[4]  Suddenly, W heard shots ring out and saw Jama standing over Knowles with a gun, pulling the trigger.  (*Id*. ¶ q.)  W described the weapon used as being chrome in color, and related that Jama ran away through the Marley project.  (*Id*. ¶¶ r-s.)  W stated that although he/she did not know Jama

---

[3] It is not clear what evidence, if any, was obtained following the search of the Frederiksted residence.  However, Charles does not seek to suppress evidence; thus, the issue is not before the Court.
[4] Sgt. Herbert indicates in the affidavit that he knows that Charles goes by the name of Jamasaon and Jama. (Aff. ¶ w.)

4

personally, W knew that he lived on King Street in Frederiksted, next to the bakery. (*Id*. ¶ t.) W also identified Charles in a photographic array containing the photos of six different individuals. (*Id*. ¶¶ u-v.) Charles attacks statements made in paragraph v of the affidavit concerning W's identification of Charles. Paragraph v states:

> That "W" picked out photograph #3, as the individual he/she saw standing behind of Dupert "Apache" Knowles III, with a chrome weapon shooting Dupert "Apache" Knowles. That said photograph is a known photograph of Jamason "Jama" Charles."

(Def. Ex. 1, Herbert Aff.)

The photograph referred to above appears in a photo array dated __/1/10 in the government's discovery production.[5] In that array, photograph number 3 is circled. Charles asserts that the statement in paragraph v concerning the witness's identification is false on the basis that there are no instructions to the witness accompanying the photographic array and no signature by any police officer.[6] In other words, Charles argues that the statement is false because it is not accompanied by sufficient documentation.

The Court notes that while Charles has "point[ed] out specifically the portion of the warrant affidavit that is claimed to be false" and provided "a statement of supporting reasons," the Court finds that the reasons are not credible. First, Charles is incorrect that the photo array contains no instruction. The photo array includes the following instruction:

---

[5] The government informs the Court in its opposition that the circled photograph referred to in paragraph v appeared in the array dated _/1/10, an averral which is supported by the fact that the affidavit states that on May 1, 2010, "W" was shown a photograph array. No other photograph identification is referenced in the affidavit.

[6] Charles seems to reach this conclusion based on the fact that the other photo array produced by the government—the one dated __/26/10—includes the instruction for the witness to "pick out the individual that does be by the health store and the individual saw [sic] at the bar before the shooting" and is signed by Herbert. However, there is no reference to a photo array with that date in Herbert's affidavit. In its opposition, the government indicates that the photo identification dated __/26/10 was made at a date much later in the investigation and hence was not included in the affidavit. The government also avers that the photo identifications made on __/1/10 and __/26/10 were made by two different witnesses.

5

> You are about to be shown a group of individuals who may or may not have been involved in a Criminal Act under Investigation.  Please look carefully at each person.  *If you can identify the person who committed the Criminal Act, please circle the appropriate number below to indicate the person you have identified*.  Do not feel obligated to choose any particular photograph unless you are certain about your identification.

(Def. Ex. 3) (emphasis added.)

Second, Charles cites no law for the premise that a statement by a police officer concerning a photo array is presumed to be false unless it is signed by the officer in question.  In addition, Charles has not provided any "[a]ffidavits or sworn or otherwise reliable statements of witnesses" that testify as to the falsity of Herbert's statement or satisfactorily explained the absence of such supporting documents.  Instead, Charles merely asserts in his motion that the absence of written statements accompanying the photo array make it "clear" that "no witness has identified the Defendant as an individual seen shooting Dupert "Apache" Knowles on May 1, 2010."

Finally, even if the Court were to set aside the statements in the affidavit concerning the photo array as being false or made with reckless disregard for the truth, "there remains sufficient content in the warrant affidavit to support a finding of probable cause," and thus "no hearing is required."  *Franks*, 438 U.S. at 172.   The other statements attributed to W in the affidavit, which are not challenged by Charles, indicate that W, despite not knowing Charles "personally," knew him well enough to know his name and where he lived.  Thus, this is not a situation where the witness identified the defendant solely by means of a photograph.  Instead, the witness identified Charles by name and was able to tell police where Charles lived. Moreover, other facts asserted in the affidavit are consistent with statements made by W.  For example, Dr. Landron, who conducted the autopsy on Knowles, stated that the gunshot wounds suggested that the

6

victim was shot from behind by a gun in close proximity to his head, a finding that is consistent with W's statement that Charles was standing right behind Knowles when he shot him. (Aff. ¶ n.)  Aside from the testimony of W, there is also other evidence linking Charles to the shooting of Knowles.   Shortly after the shooting, Charles approached a police officer at the road block at the scene of the crime and asked the officer if "somebody just died."  (Aff. ¶ f.)  A confidential informant told Sgt. Herbert that Charles was telling people in Frederiksted that he had shot Knowles in retaliation for the killing of Vincent Johnson.  (Aff. ¶ j.)   Sgt. Herbert also received information from another police officer that Charles had threatened potential witnesses of the shooting.  (Aff. ¶ l.) In short, the Court finds that even if the statement concerning W's identification of Charles in the photo array were eliminated from the affidavit, there would still be probable cause to detain the defendant.

## IV.

For the reasons stated above, Charles' motion for a Franks' hearing is DENIED.  An appropriate order will accompany this opinion.

DATED:  January 31, 2011 　　　　　　　　　　　　　　／s／　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　Raymond L. Finch
　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge

7