### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| | ) | **CRIM. NO.: 10-cr-37** |
| v. | ) | |
| | ) | |
| **JAMASON D. CHARLES** | ) | |
| | ) | |
| Defendant. | ) | |
| _____) | | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Finch, Senior Judge

THIS MATTER is before the Court on the motion of defendant Jamason Charles ("Charles") to dismiss this matter for failure to provide Brady material. Charles contends that the government failed to disclose exculpatory information concerning Luis Roldan ("Roldan"), a person defendant claims was an alternate suspect in this case.  In particular, Charles seeks information pertaining to Roldan's car, which hearsay evidence placed at the vicinity of the crime scene on the night of Dupert Knowles' murder.  The Government concedes that it has suppressed some of items sought but argues that those it has suppressed are not favorable as they do not exculpate defendant or impeach any government witness.  It further argues that the suppressed evidence is not material because it is inadmissible hearsay.  A hearing was held on the matter on July 1, 2011.  Sergreant Dino Herbert testified on behalf of the government.   For the reasons stated below, the Court finds that Charles has failed to assert a Brady violation.

## I.      Background

### A. *Charles' Pretrial Motion to Compel*

On April 11, 2011, Charles filed a motion to compel disclosure of material related to all other suspects in the investigation of the murder of Dupert Knowles, including but not limited to Luis Roldan. (Doc. 87).  As the basis for the request, Charles cited the grand jury testimony of VIPD Sergeant Dino Herbert.  Charles asserted that in his testimony, Herbert had stated that Roldan's vehicle was at the scene minutes before the shooting.  On June 6, 2011, a hearing was held on Charles' motion to compel.  At the hearing, the government asserted that did not have any information relating to additional suspects, and the Court denied the motion (Doc. 112.)

### B. *Trial*

Trial commenced on June 27, 2011.  Part of the Government's case-in-chief was surveillance footage from a stationary camera that had captured the area across the street from where the victim was found.  That footage showed that a car had driven down a street adjacent to where the victim was discovered shortly before the shooting.  On June 30, 2011, Charles called Herbert as his witness and attempted to elicit information pertaining to Roldan's car.   Specifically, Charles attempted to confirm that Herbert had testified before the grand jury that the car seen coming down the street shortly before the time of the murder belonged to Roldan.  At trial, Herbert testified that, in his grand jury testimony, he was referring to a car other than the one that passed before the shooting.  Herbert was asked to identify which car in the video he was referring to but because of a sustained hearsay objection, he never responded to that question.[1]

_____

[1] Herbert testified that the information concerning the car was not based on personal knowledge but what he had been told by a "street person," who was merely reporting what he had heard on the street.  Herbert

C. *Charles' Brady Motion*

In response, Charles filed his motion to dismiss.  He argues that he is "entitled to disclosure of the information regarding Luis Roldan, including the information provided regarding Luis Roldan's car, the identity of the person providing the information and the time the car that was suspected to be Roldan's first appeared on the video footage entered into evidence as Exhibit 3." (Mot. at 3.)   Included in the motion to dismiss is the excerpt of the grand jury testimony of Herbert that defendant relies on.  In the testimony cited by Charles, Herbert provided statements to the grand jury concerning what he viewed in video footage taken in proximity to the shooting on Marcy 16, 2010. Herbert testified as follows:

> Q:   Did you retrieve footage from the camera?
> A:   Yes, but we did receive some footage.  We didn't get some of what we want, but we got some of the other location.
> Q:   Can you describe to the members of the jury what was seen?
> A:   Basically, the footage was allowed us to see approximately three individuals sitting on the wall across from a new restaurant called Limelight or something like that.  The individuals sitting on the wall, basically just hanging out, conversing, I guess; and then we observed a vehicle came down, then we see nothing for a while.  The individuals was there, and then all of a sudden all three of them just immediately moved, which indicated to me that's when the shooting went down, because they moved like that.
> Q:   The vehicle that came down the street, were you able to determine whose vehicle it was?
> A:   We can't say it precisely, but the information received that it was a individual that's now deceased, name is Roldan.
> Q:   What's the first name?
> A:   Luis Roldan.

(Mot. at 2.)

At the Brady hearing on July 1, 2011, defendant argued that prior to trial, he should have been informed that Herbert had learned that Roldan's car had been seen in the vicinity of the

---

also attested that he had never shown the video to the street person who made the statement about Roldan's car.

murder on the night in question and been given the names of those who had provided this information to Herbert. Charles argued that dismissal was appropriate because he was entitled to this information under Brady in that it showed that Roldan could have committed the murder and that the government had intentionally withheld this exculpatory evidence. Defendant argued that the government's failure to turn over the name or names of persons who had stated that Roldan's car was seen near the crime scene deprived him of the ability to cross examine other witnesses, such as those who appeared near the crime scene on the night of the murder. The government countered that the statements made to Herbert were inadmissible hearsay statements and that the defendant failed to establish that he was prejudiced by the failure to obtain that name because he had a stronger witness: Larry John, who testified that he saw Roldan with a gun in his hand standing over the victim.

Herbert was questioned about his knowledge of Luis Roldan's car. He indicated that he was familiar with the car—a red Nissan Sentra or Maxima—from prior investigations of Charles.[2] Herbert stated that while investigating Charles's role in a 2009 homicide, he learned that Charles and Luis Roldan frequented the Taina bar and that they were often seen together in Roldan's red Nissan. Herbert had also observed Charles with the vehicle near Charles' mother Sica's health food store in Frederiksted. While investigating the March 16, 2010 shooting of Knowles, a "street person" told Herbert that he had heard that on the night of the shooting, a red car was driven from the Taina to the area of the murder. Herbert, who had frequently observed Roldan's red Nissan at the Taina bar, believed that the red car referred to might be Roldan's. When Herbert received that information, he did not follow up to see who had provided the information to the person or persons who related it to him. Nonetheless, Herbert credited the statement enough that it led him to suspect that Charles was involved in the March 16, 2010 murder. This

---

[2] Herbert also testified that Roldan operated several cars.

suspicion was based on the fact that Herbert knew that Charles operated the red Nissan. Herbert also reviewed the video footage in an attempt to ascertain whether Roldan's car appeared in it. He was unable to do so.

Herbert also revealed that a warrant to search Roldan's Maxima was executed on March 27, 2010. The government did not disclose to Charles that it had searched Roldan's vehicle. Notwithstanding Roldan's ownership of the vehicle, Herbert testified that because he believed Charles had operated it during a 2009 homicide, he conducted the search of the vehicle to look for evidence against Charles, and not Roldan. On or about March 27, 2010, Herbert searched Roldan's house, and testified that the search of the house was also related to the 2009 homicide.[3]

At the close of the hearing, Charles contended that he also had a right to view the search warrant as Brady material given that it was executed close in time to the Knowles' murder.

Following the hearing, Charles requested the following information from the government: (1) the identity of the vehicle believed to be Roldan's as depicted in the video footage; (2) the Virgin Islands Police Department's investigative files as they pertain to the murders of Herman Santos, Vincent Johnson, Dupert Knowles and Luis Roldan; (3) the notes of Sergeant Herbert or of other officers' taken during the course of investigations into the murders of Knowles, Santos and Johnson; (4) the search warrant issued for Roldan's house on March 27, 2010 and any related logs or reports concerning the search; (5) any search warrants issued for the search of Roldan's car and home between March 16, 2010 and July 3, 2010 and any related reports or logs; and  (6) the identity of individuals referred to as "street people" by Sergeant Herbert, who observed Roldan's vehicle traveling to the area of Marley Homes from the Taina bar. (Reply, Ex. 4.)

---

[3] Herbert related that the search was conducted pursuant to consent received from Roldan. At the time, Roldan was under house arrest in relation to another criminal matter.

The government responded to the request regarding the identification of Roldan's car by providing the time that the car appears in the video footage of government Exhibit 3.  (Reply, Ex. 5).  The government also identified the "street" person cited by Herbert in his testimony.  (*Id.*)[4]

## II.    Discussion

In *Brady v. Maryland*, the Supreme Court held that "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963).  Subsequent cases have held that the government has the duty to disclose even where "exculpatory evidence [was] never requested, or requested only in a general way."  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  In order to establish a violation under Brady, "a defendant must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." *Lambert v. Blackwell*,  387 F.3d 210, 252 (3d Cir. 2004) (citing *Banks v. Dretke*, 540 U.S. 668 (2004)).  "Evidence is material if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different."  *United States v. Perez*, 280 F.3d 318, 348-349 (3d Cir. 2002) (citing *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).  The key question is whether the defendant received a fair trial in the absence of the undisclosed information.  *Kyles*, 514 U.S.at 419.  The defendant has the burden of proof to show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in

---

[4] The government states in the letter that notwithstanding Herbert's reference to "street people" making statements about Roldan's car, only one person spoke directly to him.  Herbert does not know the man's name but describes him as a Black male with black hair (no locks), about 135 pounds and in his thirties who resides in an abandoned building in Frederiksted town.

the verdict." *Hollman v. Wilson*,  158 F.3d 177, 181 (3d  Cir. 1998) (citing *Kyles*, 514 U.S. at 435).

In his motion to dismiss, Charles asserts that Brady requires the government to divulge (1) which car in the video is or was suspected to be Roldan's; (2) the information supporting that evidence; and (3) the identity of the individual providing that evidence.  (Mot. at 3)  Charles argues that this evidence is "favorable to the Defendant as it supports his defense that Roldan actually committed the murder and was near the scene of the murder at the time of the murder." (*Id*. at 5.)  If Charles had received this evidence, he argues that "he could have interviewed the individual who identified Roldan's vehicle and called that witness to testify on his behalf." Moreover, "[t]his information could have led to other witnesses with similar information."  (*Id*.) Additionally, as stated above, Charles has requested a substantial amount of discovery pertaining to police investigations involving Roldan, and investigations into murders that the defendant claims are related to Knowles' killing.

The Court first considers whether the government suppressed any of the alleged Brady material, and concludes that the information it has or had arguably suppressed was as follows: (1) search warrants related to Roldan's house and car; (2) investigatory notes related to the murders of Santos, Johnson, Knowles and Roldan; (3)  that a person or persons had told Herbert that "the word on the street" was that Roldan's car was seen near the crime scene and (4) the identity of the person or persons who made that statement.

With regard to the identity of Roldan's car as it appears in the video footage, the Court finds that that fact was implicitly disclosed in the grand jury testimony of Herbert, a copy of which was available for Charles, inasmuch as Charles have could deduced from Herbert's testimony

which car he was referring to.[5]  *See United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) (holding that Brady imposes "no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed.").  The Court recognizes that the government has since disclosed the identity of the "street person" who spoke to Herbert, but, but will nonetheless treat that evidentiary item as "suppressed" for *Brady* purposes because it was arguably disclosed too late to be of much investigatory value to Charles.

Next, the Court considers whether any of the items above are favorable to Charles or meet the requirement of materiality.  With respect to item 1--the search of Roldan's car or house-- Herbert testified that police undertook the search to further the investigation of a 2009 murder. Despite cross-examining Herbert on this issue, defendant has put forward no evidence that the circumstances surrounding the search of Roldan's car or home has any relevance to this case, and has not shown that there is a reasonable probability that the warrants or items seized, if any, affect defendant's guilt or innocence.  Thus, these items do not meet either the "favorable" or the "material" requirement of Brady.  *Perez*, 280 F.3d at 348-349.

With regard to item 2, the government's failure to disclose facts about a series of killings that may be related to the death of Knowles, the Court finds that whether the information is favorable to Charles is highly speculative.  Charles, relying on information he learned over the weekend, and citing Herbert's grand jury testimony as it relates to the government's theory of a series of separate killings, presents the theory that Roldan killed Knowles in revenge for Knowles having killed Roldan's cousin Santos.  However, Charles does not allege, much less show, that the government is in possession of any of the facts that might support this theory.[6]  Given the highly

---

[5] The Court notes that, as far as it is aware, there is still no admissible evidence that Roldan's car was in fact near the scene of the murder on the night in question.

[6] The government responds that it is unaware of any exculpatory or impeachment information associated with those records.

speculative nature of Charles' latest theory of the case, which requires a chain of inferences to establish a motive on the part of Roldan to kill Knowles, and the failure to identify any particular evidence in the possession of the government that supports his theory, the Court declines to find a Brady violation. *See Apanovitch v. Houk*, 466 F.3d 460, 483 (6th Cir. 2006) (where "the possibility that the evidence might reasonably have affected the trial is simply too remote to have been prejudicial or even exculpatory. . . the government did not commit a Brady violation in failing to disclose [it]").   As the Third Circuit has noted, "Brady is not a discovery rule" and "non-disclosure alone is not sufficient to form the basis of a successful Brady challenge." *Maynard v. Government of Virgin Islands*,  No. 09-2273, 2010 WL 3330193, at *8 (3d Cir. Aug. 25, 2010)   (citing *United States v. Brown*, 595 F.3d 498, 509 (3d Cir.2010)).

The Court is also unpersuaded that the evidence placing Roldan's car near the crime scene, items 3 and 4, is material.[7]   That evidence – a statement made to Herbert by a "street person" who was himself relaying information that he heard on the street – is, at a minimum, hearsay within hearsay. *See* Fed.R.Evid. 801(c) "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Generally, undisclosed evidence will not be material for Brady purposes unless it would be admissible at trial. *See Wood v. Bartholomew*, 516 U.S. 1, 5 (1995) (failure to disclose that witness had failed polygraph test did not deprive respondent of material evidence because

---

[7] The Court is also doubts that this evidence is exculpatory.  Charles argues that if Roldan's car was present near the location where Knowles was shot at or near the time of the shooting, it is evidence that Roldan committed the crime.  It is true that evidence that someone else committed the crime is "classic Brady material."  *Williams v. Ryan*, 623 F.3d 1258, 1265-66 (9th Cir. 2010) (citation omitted).  But whether or not the presence of Roldan's red Nissan inculpates Roldan in the murder is debatable, especially in light of Herbert's testimony that he had observed Charles on occasion operating Roldan's car. On the other hand, the Court recognizes that the presence of Roldan's vehicle could bolster the testimony of Charles' witness, Larry John, who testified that Roldan murdered Knowles.  Because this is a close call, the Court assumes that the evidence is exculpatory.

polygraph results would have been inadmissible at trial, even for impeachment purposes); *see also Perez*, 280 F.3d at 349-50 (affirming district court's finding that because the undisclosed statement was inadmissible hearsay, it would not have affected the outcome of the trial); *Bradley v. Nagle*, 212 F.3d 559, 567 (11th Cir. 2000) (undisclosed evidence was not material where "[e]ach item of evidence was in fact inadmissible at trial"); *United States v. Derrick*, 163 F.3d 799, 818 (4th Cir. 1998) (undisclosed statements by legislators to FBI agents were not material in prosecution of legislators for campaign finance violations in part because they were inadmissible hearsay). Even though inadmissible, there might still be a *Brady* violation if the "the evidence in question. . . would have led the defense to some admissible material exculpatory evidence." *Bradley*, 212 F.3d at 567 (citing *Spaziano v. Singletary*, 36 F.3d 1028, 1044 (11th Cir.1994)); *see also Hutchison v. Bell*, 303 F.3d 720, 743 (6th Cir. 2002) ("information withheld by the prosecution is not material unless the information consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes") (internal quotations and citations omitted); *Maynard v. Government of Virgin Islands*, No. 09-2273, 2010 WL 3330193, at *8 (3d Cir. Aug. 25, 2010) ("a successful Brady challenge requires the defendant to show that the suppressed evidence is either itself admissible or would have directly led to evidence that would be admissible at a new trial or sentencing") (citations omitted)).

In this case, Charles merely speculates that if he had been given the "street person's" identity, he could have eventually traced the statement to its source. This, of course, assumes that there is an eyewitness source – a leap of faith that *Brady* does not require this Court to make. There is no *Brady* violation where "defendants can only speculate" that the withheld evidence contained exculpatory information. *See United States v. Rouse*, 410 F.3d 1005, 1010 (8th Cir. 2005) (cited with approval in *United States v. Cocchiola*, 358 Fed.Appx. 376, 381 (3d Cir.

2009)); *Bradley* 212 F.3d at 567 (finding no materiality because "Bradley presents only speculation that he would have uncovered any admissible evidence from these three hearsay leads."). The defendant must instead produce some evidence to show that his investigation would have borne fruit. *Maynard*, 2010 WL 3330193, at *9 (citing *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).

For example, in *United States v. Aleman*, the Court of Appeals determined that the government had not violated Brady by failing to disclose the statement of an individual who named other individuals that the defendant could have investigated when the defendant merely speculated that the other individuals would have provided evidence favorable to his defense. 548 F.3d 1158, 1164 (8th Cir.2008). As the court in *Aleman* noted, "Brady does not cover evidence that would merely help a defendant prepare for trial but is otherwise immaterial to the issues of guilt or punishment." *Id*. (citing *Agurs*, 427 U.S. at 112 n.20). Similarly, in *Bradley*, the Eleventh Circuit found that the inadmissible hearsay statement were not material, *i.e.,* that they did not undermine confidence in the verdict. The Court of Appeals explained:

> Bradley presents only speculation that he would have uncovered any admissible evidence from these three hearsay leads. Nor can we say that, had the jury heard evidence of the existence of these tenuous and ultimately fruitless police suspicions, and weighed that evidence with all the evidence against Bradley, they would have reached a different conclusion. Considering all the undisclosed evidence as a whole, we are unable to say that this verdict is not worthy of confidence.

*Id*.

"[A] defendant may not rest a Brady claim on the mere hope that he will discover exculpatory information" but must "instead . . . make a concrete showing that he has a fair probability of discovering such evidence." *Maynard*, 2010 WL 3330193, at *10. Here, Charles can only speculate that he would have recovered exculpatory evidence by making his way down

the "grapevine" of information concerning Roldan's car.  However, the Supreme Court has said that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Derrick*, 163 F.3d 799, 818 (4th Cir. 1998) (quoting *Agurs*, 427 U.S. at 109-10).  Accordingly, Charles has failed to show that any of the suppressed items were material.

### III.     Conclusion

Based on the foregoing reasons, the Court finds that the government has not committed a Brady violation.  Accordingly, it is hereby ORDERED that Charles' motion to dismiss this matter is DENIED.

**Enter**:

Dated: July 8, 2011

_____/s/_____
Raymond L. Finch
Senior U.S. District Judge